FEDERAL LAND BANK v. SELLS, ET AL
(No. 1564; September 10, 1929; 280 Pac. 98)

The cause was submitted for the appellants on the brief of *John J. Spriggs* of Lander.

The cause was submitted for the respondent on the brief of *M. C. Burk* of Riverton.

KIMBALL, Justice.

The defendants, June 19, 1922, to secure a debt of $4,000, gave plaintiff a mortgage on 160 acres of land and its appurtenances. Under power of sale, the mortgage was foreclosed, and the mortgaged property acquired by plaintiff, by proceedings which included advertisement from February 4 to March 11, 1927; sale to plaintiff on March 19, 1927, and deed to plaintiff on October 11, 1927.

On November 12, 1927, plaintiff commenced this action. The petition alleged that, under the deed on foreclosure,

plaintiff was the owner and entitled to the immediate possession of the land and its improvements; that defendants were formerly the owners and in possession, and since foreclosure had continued in possession; that defendants had wrongfully removed and disposed of valuable improvements consisting of wire fencing of the value of $300, to which the plaintiff was entitled; that defendants threatened to remove and destroy other improvements including a ''lighting system, water tanks, pump and engine parts.'' The prayer of the petition was for recovery of $300, the value of the wire fencing, and for an injunction restraining the defendants from taking down or removing any improvements or fixtures, particularly the lighting system, water tanks, pump and engine parts. At the commencement of the action a temporary restraining order, substantially as prayed for, was issued and served on defendants.

The defendants' answer denied the allegations of the petition, and alleged that the articles claimed by plaintiff as improvements or fixtures, were the ''personal goods'' of defendants.

The case was tried to a jury to whom were submitted the issues on plaintiff's cause of action for damages for removal of the wire fencing. On those issues, the jury returned a verdict for plaintiff fixing its damages at $100. During the trial, the defendant, J. H. Sells, who was called for cross-examination by plaintiff, admitted that, after the service of the temporary restraining order, he had removed from the land articles mentioned in the restraining order, and also a heater or heating plant.

The trial was concluded, and the verdict for plaintiff for $100 damages for removal of the wire fencing returned, June 14, 1928. On June 15, 1928, the plaintiff filed an ''application for an order of attachment for contempt,'' in which it was stated that defendant, J. H. Sells, during the trial of the case, had admitted that he had

violated the court's restraining order by taking from the land improvements and fixtures of the approximate value of $600. The plaintiff prayed that defendant be brought before the court on an attachment for contempt, and that he be punished and required to make restitution to the plaintiff.

The application for an attachment for contempt apparently was not granted, nor otherwise acted on. No attachment for contempt was issued or served, nor does the record show that defendants were notified of the filing of the application. On the day the application was filed, which was the day following the trial and verdict, the judgment was entered. It is a judgment on the verdict for the damages thereby assessed, and for costs. The temporary restraining order is made permanent. It is found that the heating plant, and the articles specifically mentioned in the temporary restraining order, were fixtures, and property of plaintiff, and had been removed by defendant, J. H. Sells, wrongfully and in disobedience of the order of the court. The defendant, J. H. Sells, is adjudged in contempt, and ordered to return the property, or pay plaintiff the value found to be $500. The defendants appeal from the judgment.

The wire fencing in question consisted of strips of woven wire, 26 inches wide, such as is in common use to reenforce fences of lands on which sheep or hogs are confined. The defendant, J. H. Sells, testified that he removed from the land about 100 rods of such wire that had previously been in use on the land in maintaining what he claimed was a temporary sheep pasture. The woven wire, when so in use, was fastened by means of baling wire to the barbed-wire fence, and supported between the fence posts by additional posts or stakes. So far as the evidence discloses, the woven wire was removed without damage to the barbed-wire fence to which it had been attached. The plaintiff contended that the woven wire,

so attached, became a fixture. It is apparently conceded that the question whether or not it was a fixture, was one of fact for the jury.

While the evidence was sufficient to support the finding that the woven wire was a fixture, we think the jury were permitted to consider on that question irrelevant evidence which, in view of the court's instructions, was probably prejudicial to defendants. The loan secured by the mortgage was made on defendants' written application on a blank furnished for that purpose. The application was for a loan of $6500. The land was then encumbered by a mortgage to W. M. Wingert to secure a debt which with interest amounted to some $4800. The defendants, in their application to plaintiff for the loan of $6500, represented that $4800 would be used to discharge the Wingert mortgage; $325 to pay for shares of stock in the National Farm Association, and $1375 to construct "hog barns and woven wire fencing." The application was granted for only $4000, of which defendants were required to invest $200 in shares of stock of the farm association. This left $3800, of which all but $25 was paid on the Wingert mortgage. The plaintiff, over objection, introduced this application in evidence. The jury were instructed that the application was introduced to show "that the defendants made a representation at the time of their application for their loan which was secured by mortgage, that the money to be advanced was partly to be used for purchase of hog wire, and that by the terms of the mortgage, such application became a part thereof and one of the conditions of said mortgage and the law presumes that the defendant performed that condition and did so apply the money loaned, and this evidence was permitted for the purpose of showing the intent of the parties as to whether they considered such fencing a fixture and the intent with which the defendant purchased and placed said wire upon the lands."

We think the application for the loan was not admissible for the stated purpose. The representation that $1375 of the loaned money would be used for hog barns and woven wire fencing was made in contemplation of the granting of the application for a loan of $6500. The loan actually made was less than the amount necessary to discharge the Wingert mortgage, and all but $25 was paid to Wingert by plaintiff's agent. The money was used as plaintiff intended and required that it be used. We cannot see that, in the circumstances, the defendants' representation that they would use $1375 of the loaned money in the construction of hog barns and wire fencing was at all material on any issue in the case. The error in admitting it in evidence might have been harmless, except for the emphasis placed on it by the court's instruction telling the jury that the representation became a condition of the mortgage which the "law presumes" the defendant fulfilled.

The plaintiff, to prove its title to the land, introduced the records of the foreclosure proceedings. The defendants contend that those records show that at the foreclosure sale the plaintiff bid the full amount of the debt, interest and costs, and that the mortgage debt was thereby satisfied and the mortgage fully discharged. That is probably true—at least it must be taken as true for the purposes of this decision. While the plaintiff, in its amended petition, alleged that there was a deficiency of some $330 on account of unpaid taxes, the allegation seems to have been treated as a separate cause of action, and defendants' demurrer to it was sustained. The plaintiff at the trial did not offer to prove that there was any deficiency due it as mortgagee. When a mortgagee purchasing the property at the foreclosure sale bids the full amount due him, the mortgage is satisfied and discharged. Berthold v. Holman, 12 Minn. 335; Tinkoom v. Lewis, 21 Minn. 132, 137; Corbin v. Reed, 43 Ia. 459. And see: Hood v.

Adams, 124 Mass. 481; Taylor v. McConnell, 53 Mich. 587, 19 N. W. 196; Levy v. Mayor etc. of New York, 26 N. Y. Sup. Ct. (3 Rob.) 194. Some of the foregoing cases indicate that, when the mortgage is thus satisfied, the mortgagee, who has become the owner of the property, can have no ground to complain of waste to the property prior to the sale on foreclosure. See Berthold v. Holman and Corbin v. Reed, supra.

If on foreclosure the mortgaged property bring an amount sufficient to satisfy the claim of the mortgagee, either by sale to a third person or to the mortgagee, we assume the rule of law to be that the mortgagee, as such, can claim no damages for removal of fixtures by the mortgagor before the sale. It may be that in some circumstances the purchaser at the sale, whether he be the mortgagee or a third person, would have a right to damages from the mortgagor who removed fixtures before the sale. We should hesitate to lay down a rule that would seem to permit a mortgagor, whose mortgage is about to be foreclosed, to remove, perhaps secretly and on the eve of the sale, fixtures from the land, and then to escape liability to the purchaser who, in ignorance of the fact of removal of the fixtures, had bought the property for an amount sufficient to satisfy the claim of the mortgagee. Whether, and in what cases, the mortgagee who becomes the purchaser of the mortgaged property for the full amount of his claim, may recover damages from a mortgagor who, before the sale, removed fixtures from the land, need not, we think, be decided at this time. The plaintiff in the case at bar evidently sued on the theory that it became the owner of the woven wire in question by purchase at the sale when the wire was a fixture on the land, and that it was damaged by the removal of the wire after the sale. The testimony of plaintiff's witnesses tended to prove that the woven wire was removed from the land in April or May, 1927, following the sale on

March 19, 1927. The defendant, J. H. Sells, testified that some of the wire was removed from the land a year before the sale, but admitted that some of it was removed in the spring of 1927. The plaintiff in its brief in this court does not contend that it was entitled to damages for wire removed before the sale, but argues that the evidence sufficiently showed that the wire was removed after the sale, and says that the question of the time of removal was submitted to the jury. We see no reason to question the sufficiency of the evidence to support a finding that the wire was removed after the sale. That, however, at least as to part of the wire, was a disputed question of fact, and it is doubtful whether it was submitted to the jury. It is true that in one instruction the jury were told to find for the plaintiff, if "the property alleged to have been removed was a part of the realty and on the premises at the time of the purchase"; and in another they were told to find for the plaintiff if "the defendant removed the property in question after the sale was made." But by other instructions the jury were told in effect that the time of removal was immaterial, and by one they were told that the "only question submitted to the jury in this case is as to whether the fence wire is a fixture as defined in these instructions, and the value thereof." If, as seems to be conceded, the removal of the wire by defendants after the sale was a material fact necessary to prove the plaintiff's case as stated in its petition, the instructions by which the question was submitted to the jury were so contradictory and confusing as to constitute error.

The part of the judgment that finds the defendant, J. H. Sells, guilty of contempt and fixes the terms of restitution to the plaintiff, cannot be sustained. Section 6178, C. S. 1920, provides that disobedience of an injunction or restraining order may be punished by the court or judge as a contempt. The procedure prescribed by the statute

includes the issuance of an attachment by the court or judge upon being satisfied by affidavit of the breach of the injunction or order. The guilty party may be required to pay a fine not exceeding $200, and to make immediate restitution to the party injured. The statutory procedure was not followed in the case at bar. No attachment was issued, and the affidavit therefor, filed after the trial, without notice to defendant, could not be a sufficient basis for the court's action. We need not decide whether or not a party who has violated an injunction may waive the filing of an affidavit and issuance of an attachment. See Wilson v. Territory, 1 Wyo. 155. Assuming that he might, we cannot hold that the defendant did so in this case. There is nothing in the record to refute defendant's claim that he had no knowledge that he was being tried for contempt. As already shown, the only question for the jury was the plaintiff's claim for damages for removal of the woven wire, but it was apparently understood, at least by plaintiff's counsel and the trial judge, that while the evidence pertinent on the question of damages was being heard by the jury, evidence on the question of the right to injunction was being heard by the judge. The evidence that defendant had violated the temporary restraining order was apparently admitted for the purpose of sustaining plaintiff's allegations with respect to its right to an injunction. We cannot know what further evidence defendant might have wished to introduce had he known the question of contempt was being tried. The judgment finding him guilty of contempt and fixing the terms of restitution to plaintiff was irregular, if not entirely without jurisdiction. See Ex Parte Ratliff, 117 Tex. 325, 3 S. W. (2d) 406, 57 A. L. R. 541, and cases cited.

The judgment of the district court is reversed and the case remanded for a new trial.

BLUME, Ch. J., and RINER, J., concur.