# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Republic Bank of Chicago v. 1st Advantage Bank*, 2013 IL App (1st) 120885

| | |
|---|---|
| Appellate Court Caption | REPUBLIC BANK OF CHICAGO, Plaintiff-Appellee, v. 1ST ADVANTAGE BANK; ABCO LEASING, INC.; ACADEMIC CAPITAL GROUP, INC.; ADVANCE FINANCIAL SOLUTIONS, INC.; ALERUS FINANCIAL, N.A.; ALFA FINANCIAL, N.A.; ALFA FINANCIAL CORPORATION DBA OFC CAPITAL; ALL POINTS CAPITAL CORPORATION.; ALLIANCE COMMERCIAL CAPITAL, INC.; ALLIANCE LEASING, INC.; ALTEC CAPITAL (QUAIL CAPITAL); ALTEC CAPITAL SERVICES, LLC; AMERICAN BANK, FSB; AMERICAN BANK LEASING CORPORATION; AMERICAN CHARTERED BANK; ASSOCIATED BANK, NATIONAL ASSOCIATION; AUTO CAPITAL GROUP; BMT LEASING, INC.; BALBOA LEASING; BANK MIDWEST, N.A.; BANK OF DIXON COUNTY; BANK OF THE WEST; BARRETT TRADE AND FINANCE GROUP, LLC; BRYN MAWR; BUTLER CAPITAL CORPORATION; CFC INVESTMENT COMPANY; CM FINANCIAL; CENTER CAPITAL CORPORATION; CENTER NATIONAL BANK; CHARTER NATIONAL BANK AND TRUST; CHERRY CREEK ASSET-BACKED INCOME FUND, L.P.; CITIZENS BANK AND TRUST COMPANY OF CHICAGO; COACTIV CAPITAL PARTNERS, LLC; COMERICA LEASING, a Division of Comerica Bank; COURT SQUARE LEASING CORPORATION; CROSSROADS BANK; CUPERTINO NATIONAL BANK, c/o Greater Bay Equipment Finance; DEERBART FINANCIAL SERVICES COMPANY; DIAMOND LEASE U.S.A., INC.; ENTERPRISE FUNDING GROUP LLC; EQUILEASE FINANCIAL SERVICES, INC.; EQUIPMENT ACQUISITION RESOURCES, INC.; EVANS NATIONAL LEASING, INC.; EVERGREEN LEASING, INC.; FARMERS AND MERCHANTS BANK; FIFTH THIRD BANK (CHICAGO); FIRST BANK; FIRST BANK AND TRUST; FIRST COMMUNITY BANK; FIRST CREDIT FUNDING, LLC; FIRST DUPAGE BANK; FIRST FEDERAL SAVINGS BANK; FIRST MIDWEST BANK; FIRST MUTUAL BANK; FIRST NATIONAL BANK OF MCHENRY; FIRST NATION- |

AL EQUIPMENT FINANCING, INC.; FIRST PREMIER CAPITAL, LLC; FIRSTLEASE INC.; GIS ROLLING, L.L.C.; GIS VENTURE; HEWLETT-PACKARD FINANCIAL SERVICES COMPANY; HIGHLAND BANK; HOME FEDERAL SAVINGS BANK; HORIZON BANK; IBM CREDIT LLC; IRWIN BUSINESS FINANCE CORPORATION; KCL, LLC; KLC FINANCIAL, INC.; KSP ACQUISITION CORPORATION; KEY GOVERNMENT FINANCE, INC.; LFC CAPITAL, INC.; LAKELAND BANK EQUIPMENT LEASING DIVISION; LEAF FUNDING, INC.; LEASECORP, INC.; LEASING INNOVATIONS, INC.; LEASING ONE CORPORATION; LIBERTYVILLE BANK AND TRUST; LOYALTY FINANCE, INC.; LYON FINANCIAL SERVICES, INC.; MB FINANCIAL BANK N.A.; MANUFACTURERS ACCEPTANCE CORPORATION DBA HERITAGE PACIFIC LEASING; MARLIN LEASING CORPORATION; MICHIGAN HERITAGE BANK; MILLENNIUM BANK; MINWEST BANK; NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC; NATIONAL CITY COMMERCIAL CAPITAL CORPORATION; NORSTATES BANK; NORTHWAY STATE BANK; OFC CAPITAL CORPORATION; PNB CAPITAL LEASING, LP; PENTECH FINANCIAL SERVICES, INC.; PEOPLE'S CAPITAL AND LEASING CORPORATION; PEOPLE'S NATIONAL BANK OF KEWANEE; PLAINS CAPITAL LEASING, LP; PULLMAN BANK AND TRUST COMPANY; RED OAK CAPITAL; ROCKFORD CAPITAL LEASING, INC.; SG EQUIPMENT FINANCE USA CORPORATION; SHERMAN AND COMPANY; SKY BANK LEASING; SOVEREIGN BANK; STAR FINANCIAL BANK; STATE FINANCIAL BANK; STEFAN SYDOR OPTICS; STERLING NATIONAL BANK; SUNTRUST LEASING CORPORATION; SUSQUEHANNA COMMERCIAL; TD BANKNORTH LEASING CORPORATION; THE COMMUNITY BANK; THE NORTH SIDE BANK AND TRUST COMPANY; TOWN AND COUNTRY LEASING LLC; TRINITY, a Division of Bank of the West; UC BANCORP; US FINANCIAL, LLC; VARILEASE TECHNOLOGY FINANCE GROUP, INC.; VELOCITY LEASE FUNDING, LLC; WAUKEGAN SAVINGS BANK; and UNKNOWN CLAIMANTS, Defendants (Icon Ear, LLC, and Icon Ear II, LLC, Defendants-Appellants).

District & No.    First District, First Division
Docket No. 1-12-0885

-2-

| Filed | September 16, 2013 |
|---|---|

| Held | In an action arising from lessees' default on their leases of equipment |
|---|---|
| (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | from defendant, the trial court properly held that when defendant foreclosed on Wyoming real estate owned by the individual lessees and mortgaged to defendant to secure their agreements to guaranty the performance of their lease obligations, defendant's purchase of the real estate with a bid of the total lease obligation satisfied both the lessees' debt to defendant and their obligations under the guaranty agreements, and plaintiff, one of the lessees' creditors, was free to pursue its claim for the leased equipment. |

| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-14025; the Hon. Peter Flynn, Judge, presiding. |
|---|---|

| Judgment | Affirmed. |
|---|---|

| Counsel on Appeal | Reed Smith, LLP, of Chicago (Stephen T. Bobo, Michael D. Richman, and Peter M. Stasiewicz, of counsel), for appellants. |
|---|---|
| | Ruff, Weidenaar & Reidy, Ltd., of Chicago (Edward P. Freud and Michael B. Bregman, of counsel), for appellee. |

| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. |
|---|---|
| | Presiding Justice Connors and Justice Hoffman concurred in the judgment and opinion. |

**OPINION**

¶ 1        This appeal arises from a March 6, 2012 order entered by the circuit court of Cook County which granted summary judgment in favor of plaintiff-appellee Republic Bank of Chicago (Republic Bank). On appeal, defendants-appellants Icon Ear, LLC, and Icon Ear II, LLC (collectively, Icon), argue that: (1) the trial court erred in granting summary judgment in favor of Republic Bank because the law of guaranties governs in this case; and (2) the trial

court erred in granting summary judgment in favor of Republic Bank because the "full credit bid rule" does not apply in this case. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3         Icon is a specialty finance company and manager of publicly registered funds that invest in business-essential equipment and corporate infrastructures. Equipment Acquisition Resources, Inc. (EAR), was an Illinois corporation that developed processes for manufacturing wafer chips for the semiconductor industry, as well as refurbished and resold related semiconductor manufacturing equipment. On December 24, 2007, Icon entered into a lease agreement with EAR which stated that Icon would lease equipment to EAR pursuant to various leasing schedules. On lease schedule number one, the equipment that EAR received was listed at a price of $6,935,000.

¶ 4         According to Icon, in January 2008, Icon learned that Sheldon Player (Sheldon), one of EAR's principals, had previously been convicted and sentenced for participating in a fraudulent scheme involving equipment financing. Consequently, EAR offered Icon additional collateral in the form of mortgages encumbering Wyoming real estate, in exchange for Icon agreeing to finance additional lease schedules. The Wyoming real estate consisted of six parcels of land owned by Sheldon and his family. On March 18, 2008, Sheldon, his son, Dale Player (Dale), and his daughter, Dana Malone (Dana) (collectively, the Players), executed guaranty agreements as consideration for Icon's agreement to execute lease schedule number two and future lease schedules. In addition to the guaranties, the Players mortgaged the Wyoming real estate to Icon. The terms of the guaranties stated, in pertinent part: "[Icon's] sole and exclusive remedy against [the Players] **shall be limited** to [the Players'] interest in the Mortgage Premises." (Emphasis in original.)

¶ 5         On April 24, 2008, Icon leased equipment that was listed at a price of $6,347,500.02 to EAR, pursuant to lease schedule number two. On June 6, 2008, Icon leased equipment that was listed at a price of $6,325,500 to EAR, pursuant to lease schedule number three. On June 30, 2008, Icon leased equipment that was listed at a price of $2,469,000 to EAR, pursuant to lease schedule number four. As of June 30, 2008, Icon had leased equipment worth a total of $22,077,000.02 to EAR.

¶ 6         During the summer of 2009, EAR defaulted on its lease payments to Icon. On October 23, 2009, EAR filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. On November 19, 2009, the bankruptcy court entered an order which granted Icon's emergency motion to modify the automatic stay. The court's order lifted the automatic stay with respect to the Wyoming real estate that was subject to Icon's mortgages. Icon then began the process of foreclosing its mortgages on the Wyoming real estate. On December 1, 2009, the sheriff of Teton County, Wyoming, sold the Wyoming real estate through foreclosure proceedings. Icon successfully purchased the Wyoming real estate with a credit bid of $22,743,564.44, which represented the full amount of the debt owed to Icon under the lease agreement with EAR.

¶ 7         On March 22, 2010, Icon filed a complaint for replevin against EAR in the circuit court

of Cook County. In its complaint, Icon sought immediate possession of the equipment that was leased to EAR. Additionally, numerous other lessors and lenders filed similar complaints against EAR. On April 2, 2010, Republic Bank filed a complaint against EAR for judicial foreclosure and declaratory judgment under case number 10 CH 14025. On April 5, 2010, the court consolidated the multiple complaints into a single action under case number 10 CH 14025. On June 30, 2010, Icon filed an answer and affirmative defenses which contested Republic Bank's right to the equipment that was leased to EAR and sought return of the equipment. Additionally, Icon filed counterclaims which sought a declaratory judgment that Icon was the owner of all of the equipment and that its interests in the equipment were senior to the rights of all other parties.

¶ 8        From June 2010 through July 2011, Icon sold five of the six parcels of the Wyoming real estate to unrelated third parties. Icon realized total net proceeds of $2,159,777.05 from the sales of the real estate. The sixth parcel of the Wyoming real estate remains unsold. On August 26, 2010, the trial court entered an order which authorized the hiring of an auctioneer to sell the equipment that had been leased to EAR. The trial court's order stated that all parties with claims to the equipment "retain all heretofore existing rights and claims to the Auction Proceeds." On September 23, 2011, Icon filed a proof of claim to the proceeds of the sale of the equipment that was leased to EAR. Icon's proof of claim alleged that after accounting for the proceeds from the sales of the Wyoming real estate, the net amount owed to Icon by EAR was $17,487,520.30.

¶ 9        On January 3, 2012, Republic Bank filed a motion for summary judgment against Icon. The motion alleged that EAR's debt to Icon was extinguished because at the foreclosure sale of the Wyoming real estate, Icon made a "credit bid" for the full amount of the debt owed by Ear to Icon. On January 31, 2012, Icon filed a response to Republic Bank's motion for summary judgment. On March 6, 2012, the trial court held a hearing on Republic Bank's motion for summary judgment. The court found that Icon's credit bid at the foreclosure sale of the Wyoming real estate satisfied both the obligations under the guaranty agreements and Icon's claim against EAR. The trial court reasoned that the effect of a full credit bid under Wyoming law is to extinguish the debt and that the individuals who executed the guaranty agreements did not have an independent debt to Icon. Thus, the trial court granted Republic Bank's motion for summary judgment. The trial court found that the judgment was final and appealable pursuant to Illinois Supreme Court Rule 304(b) (eff. Feb. 26, 2010).

¶ 10        On March 23, 2012, Icon filed a timely notice of appeal. Therefore, this court has jurisdiction to consider Icon's arguments on appeal pursuant to Illinois Supreme Court Rule 303 (eff. May 30, 2008) and Rule 304(b).

¶ 11                                                     ANALYSIS

¶ 12        As a preliminary matter, we note that this case raises an issue of conflict of laws. Both parties argue that because this case involves real estate that is located in Wyoming, Wyoming law should govern our analysis. We agree. In resolving conflict-of-laws questions, Illinois courts rely on the principles of the Restatement (Second) of Conflict of Laws and the traditional legal doctrine that "the law of the State where the real estate is situated governs

the rights of the parties." *Lake County Trust Co. v. Two Bar B, Inc.*, 238 Ill. App. 3d 589, 595 (1992). Therefore, we apply Wyoming law in our analysis of this case.

¶ 13    On appeal, we determine whether the trial court erred in granting summary judgment in favor of Republic Bank. We note that both parties present numerous arguments on appeal. However, not all of the parties' arguments have bearing on our resolution of the case. Therefore, we will only discuss the parties' most relevant arguments.

¶ 14    Icon first argues that the trial court erred in granting summary judgment in favor of Republic Bank because the law of guaranties governs in this case. Icon argues that under the law of guaranties, a guaranty is an obligation to pay the debt of another. Icon contends that a guaranty is a separate and independent obligation from that of the principal obligor and that a guaranty may be discharged without discharging the principal obligor. Therefore, Icon argues that the guaranty agreements executed by the Players were separate and independent obligations from EAR's debt to Icon. Also, Icon asserts that the guaranty agreements were executed for separate and distinct consideration, which was Icon's agreement to execute lease schedule number two. Icon argues that the terms of the guaranty agreements clearly state that Icon's sole and exclusive remedy against the Players was limited to their interest in the Wyoming real estate. Thus, Icon contends that its purchase of the Wyoming real estate only satisfied the guaranty agreements and not the full amount of EAR's debt to Icon.

¶ 15    Additionally, Icon argues that the trial court made incorrect conclusions regarding the Players' ability to recoup their losses from EAR. Icon points out that in making its ruling, the trial court made the following statements:

> "THE COURT: A guarantor, it seems to me, pretty much invariably if he pays the debt, can collect from the actual debtor the amount that the guarantor paid to discharge the debtor's obligation.
>
> It would seem to me that under Wyoming law, the amount of the guarantor's claim against the debtor would be the amount of Icon's full credit bid. If that is correct, then we are in a situation in which [the Players have to pay EAR] *** the $22 million that Icon bid."

Also, Icon points out that the trial court further stated that if EAR paid the Players the amount of Icon's bid, while Icon continued to assert its claims against EAR and claim title to the equipment, this would result in a "double whammy" to the other creditors of EAR. Icon claims that the trial court's conclusions were incorrect because under Wyoming law, the right of a guarantor to recover from the principal obligor is based in equity. Icon contends that the principle of equity states that the law promises reimbursement to a guarantor when the guarantor pays the debt of the principal debtor. Thus, Icon claims that the Players' recovery against EAR should be limited to the value of the Wyoming real estate, which was $2,159,777.05. Icon argues that the Players should only be entitled to recover from EAR the value of the property they *actually lost*. Icon asserts that it would be nonsensical and inequitable for the Players to receive a windfall of more than $22 million when the Wyoming real estate was only worth around $3 million.

¶ 16    Next, Icon argues that the trial court erred in granting summary judgment in favor of Republic Bank because the "full credit bid rule" does not apply in this case. Icon points out

that the full credit bid rule provides that at a foreclosure sale, a "full credit bid" is equal to " 'the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure.' " *Alliance Mortgage Co. v. Rothwell*, 900 P.2d 601, 608 (Cal. 1995) (quoting *Cornelison v. Kornbluth*, 542 P.2d 981, 992 n.10 (Cal. 1975)). If the full credit bid results in the acquisition of the property, the lender, in effect, pays itself the full outstanding balance of the debt and costs of foreclosure. *Alliance*, 900 P.2d at 608. Thus, the lender takes title to the property placed as security and the borrower is released from further obligations under the note. *Id.* Additionally, the lender "is precluded for purposes of collecting its debt from later claiming that the property was actually worth less than the bid." *Id.* Icon argues that the trial court erred in granting summary judgment in favor of Republic Bank because the court applied the full credit bid rule when it concluded that EAR's debt to Icon was extinguished due to Icon's full credit bid at the foreclosure sale for the Wyoming real estate.

¶ 17      Icon contends that the full credit bid rule cannot be applied in this case because no Wyoming court has ever applied the rule in any case. Icon argues that under Wyoming law, courts will not create additional protection for borrowers absent explicit legislative pronouncements. Icon asserts that the full credit bid rule is a judicially created protection for borrowers, and thus, Wyoming courts will not recognize the rule. Icon argues that this court should not create new law interpreting the Wyoming statutory foreclosure scheme. Icon contends that under Wyoming law, it is the *mortgage* that is satisfied by a full credit bid, as opposed to the vague category of "the debt." Icon claims that the obligations under the guaranty agreements were satisfied by Icon's credit bid; however, EAR's debt to Icon is separate and distinct from the guaranty agreements. Also, Icon argues that even if Wyoming recognized the full credit bid rule, there is no precedent in any state suggesting that the rule would apply to the debt of EAR because EAR is not a party to the guaranty agreements. Icon asserts that the full credit bid rule is not meant to protect third parties such as tortfeasors or competing creditors like Republic Bank. Icon contends that it sued EAR under the tort theory of replevin, and multiple states have held that the full credit bid rule does not bar tort claims against third parties.

¶ 18      Further, Icon argues that its credit bid has the same result under the language of the guaranty agreements as it does under Wyoming law. Icon asserts that Wyoming, by statute, follows a "lien theory" mortgage foreclosure scheme, which states that the proceeds of a foreclosure sale are used to first pay expenses and attorney fees; then used to satisfy the obligations secured by the mortgage being foreclosed; and then distributed to junior lienholders. Wyo. Stat. Ann. § 34-4-113(a) (West 2010). Any remaining proceeds are paid to the mortgagor as a surplus, while the mortgagor remains liable for any deficiency. Wyo. Stat. Ann. § 34-4-113(c) (West 2010). After the property has been sold through foreclosure, the mortgagor has the right to redeem the real estate by paying the purchaser the amount of the bid, if purchased by the mortgagee under a mortgage. Wyo. Stat. Ann. § 1-18-103(a) (West 2010). Icon argues that the lien theory scheme binds a mortgagor to the terms of the initial bargain and prevents the mortgagor from redeeming the property at a deflated price after foreclosure. Thus, Icon claims that when it bid on the Wyoming real estate at the foreclosure sale, it was bidding on the Players' obligation, as opposed to EAR's debt. Icon

asserts that by bidding more than $22 million, Icon was precluding the Players from being able to redeem their property at a lesser price. Icon argues that the fact that it made separate $22 million bids for each of the lots of the Wyoming real estate is further evidence that the credit bid extinguished only the mortgages securing the potential liability of the Players. Icon claims that the multiple $22 million bids also highlight that the amount of the credit bids bore no relationship to the value of the underlying property. Icon argues that the only theoretical result of the credit bid is that Icon was binding itself to the value of the Wyoming real estate if it thereafter pursued a deficiency claim against the Players relating to their mortgages. Therefore, Icon argues that the trial court erred in applying the full credit bid rule in this case and erred in granting summary judgment in favor of Republic Bank.

¶ 19    In response, Republic Bank first argues that the trial court did not err in granting summary judgment in favor of Republic Bank because the loan documents and Wyoming law support the court's judgment. Specifically, Republic Bank argues that Icon's argument is contradictory because Icon claimed that its credit bid was valid and enforceable when it obtained title to the Wyoming real estate, but the same credit bid was of no legal significance in reference to the remaining debt owed by EAR. Republic Bank contends that the plain and unambiguous language of the mortgages and guaranties supports the trial court's judgment. Republic Bank points out that each of the mortgages executed by the Players and Sheldon's wife, Donna Malone (Donna), contains identical language, most notably in the section which defines the term "Secured Debt." The mortgages state, in pertinent part:

> "*Secured Debt*: to the extent not prohibited by Laws, Guarantor's unconditional and absolute guaranty of the due and punctual Rent (as defined by the Guaranty) payments due under the Lease Documents and any other monies due or which may become due under the Lease documents, including those monies due as a result of any loss or damage to the Equipment (as defined by the Guaranty), and the due and punctual performance and observance by [EAR] ('Lessee'), under the Lease Documents, of any other terms, covenants, and conditions of the Lease Documents on the part of Lessee to be kept, observed or performed, and any remedies described by the Lease Documents available to Mortgagee, as Lessor under the Lease, as a result of Lessee's default under the terms and conditions of the Lease Documents, whether according to the present terms thereof, at any earlier date or dates as provided therein, or pursuant to any extension of time or to any change or changes in the terms, covenants and conditions thereof now or at any time hereafter made or granted."

¶ 20    Republic Bank argues that under this definition, the secured debt was the same debt incurred by EAR under the lease. Thus, Republic Bank asserts that the plain language of the mortgages show that the mortgages secured EAR's debt, as opposed to the obligations under the guaranty agreements. Republic Bank points out that the mortgages also authorized Icon to sell the mortgaged property in the event of default and authorized Icon to credit bid at the sale of the mortgaged property. Additionally, the mortgages stated that all sums realized at the sale of the mortgaged property shall be applied to the secured debt. Because Icon credit bid more than $22 million for the Wyoming real estate, Republic Bank argues that the full amount of Icon's bid must be applied to the secured debt. Republic Bank asserts that since the secured debt is the same debt incurred by EAR, then Icon's credit bid satisfied EAR's

-8-

debt in full.

¶ 21    Next, Republic Bank argues that although Wyoming follows a lien theory mortgage foreclosure scheme, Icon's credit bid paid EAR's debt in full. Republic Bank contends that Wyoming law allows for deficiency judgments against mortgagors in addition to the loss of the mortgaged real estate. However, Republic Bank points out that Icon did not pursue a deficiency judgment against EAR or any of the individuals that executed the guaranty agreements. Instead, Icon chose to credit bid the full amount of EAR's debt on the Wyoming real estate. Republic Bank claims that under Wyoming law, Icon's credit bid was applied in satisfaction of obligations secured by the mortgage being foreclosed. Thus, Republic Bank asserts that the proceeds of the foreclosure sale of $22,743,564.44 were credited to Icon and applied toward EAR's underlying debt.

¶ 22    Additionally, Republic Bank argues that it never based its argument on the full credit bid rule before the trial court, and does not argue on appeal, that the rule should be applied. Likewise, Republic Bank claims that the trial court did not apply the rule in making its ruling. Republic Bank agrees with Icon and states that Wyoming does not recognize the full credit bid rule. Rather, Republic Bank argues that the trial court based its ruling on the fact that Icon bid more than $22 million at the foreclosure sale, and that applicable Wyoming statutes and Wyoming case law state that the proceeds of a foreclosure sale satisfy the mortgage debt.

¶ 23    Turning to the merits of the appeal, we determine whether the trial court erred in granting summary judgment in favor of Republic Bank. We review the trial court's grant of a motion for summary judgment under the *de novo* standard of review. *American Family Mutual Insurance Co. v. Chiczewski*, 298 Ill. App. 3d 1092, 1094 (1998).

¶ 24    As recognized by both parties, the full credit bid rule is not recognized in the state of Wyoming. As we have determined that Wyoming law applies, we therefore will not discuss the construction or application of the full credit bid rule. Rather, we shall discuss the effect of Icon's credit bid under Wyoming law, analyzed under the terms of the guaranty agreements, mortgages, and lease agreement applicable to the transaction.

¶ 25    Despite the numerous arguments presented by both parties, the seminal issue in this case is whether the mortgages executed by the Players secured EAR's debt. Under Wyoming law, when a lender bids the full amount due to him at a foreclosure sale, the mortgage is satisfied and discharged. *Federal Land Bank of Omaha v. Sells*, 280 P. 98, 100 (Wyo. 1929); Wyo. Stat. Ann. § 34-4-113(a) (West 2010). A guaranty agreement is a contract to pay the debt of another, and is secondary to the instrument it guarantees. *Belden v. Thorkildsen*, 2008 WY 148, ¶ 20, 197 P.3d 148, 154 (Wyo. 2008).

¶ 26    As Icon points out, Wyoming follows a "lien theory" mortgage foreclosure scheme which states that the proceeds of a foreclosure sale are used to first pay expenses and attorney fees; then used to satisfy the obligations secured by the mortgage being foreclosed; and then distributed to junior lienholders. Wyo. Stat. Ann. § 34-4-113(a) (West 2010). Any remaining proceeds are paid to the mortgagor as a surplus, while the mortgagor remains liable for any deficiency. Wyo. Stat. Ann. § 34-4-113(c) (West 2010). After the property has been sold through foreclosure, the mortgagor has the right to redeem the real estate by paying the

purchaser the amount of the bid if purchased by the mortgagee under a mortgage. Wyo. Stat. Ann. § 1-18-103(a) (West 2010). "[T]he right to sue for a deficiency is logical to bind a mortgagor to the terms of the initial bargain and prevent redemption at a deflated price after foreclosure. " *Fitch v. Buffalo Federal Savings & Loan Ass'n*, 751 P.2d 1309, 1312 (Wyo. 1988).

¶ 27	Icon argues that guaranty agreements are separate and distinct obligations from the underlying debts for which they are collateral. We agree with that general principle of law. Icon also points out that the guaranty agreements executed by the Players in this transaction state that Icon's sole and exclusive remedy against the Players is limited to the Players' interest in the Wyoming real estate. However, Wyoming law states that when a lender makes a full credit bid at a foreclosure sale, "the *mortgage* is satisfied and discharged." (Emphasis added.) *Federal Land Bank*, 280 P. at 100. Thus, in addition to the language of the guaranty agreements, we must look to the plain language of the mortgages to determine what debt the mortgages secured. The mortgages executed by the Players defined the debt that they secured in the "Secured Debt" section of the mortgages. The mortgages state, in pertinent part:

> "*Secured Debt*: to the extent not prohibited by Laws, Guarantor's unconditional and absolute guaranty of the due and punctual Rent (as defined by the Guaranty) payments due under the Lease Documents and any other monies due or which may become due under the Lease documents ***."

¶ 28	Icon argues that in the phrase "Guarantor's unconditional and absolute guaranty," the use of the word "guaranty" shows that the mortgages secured the guaranty agreements executed by the Players, as opposed to EAR's debt as a whole. On the other hand, Republic Bank argues that the mortgages state that the secured debt is the same debt as EAR's debt to Icon. We agree with Republic Bank's argument. In each of the mortgages, the term "Guaranty" is defined as the guaranty agreements executed by the Players. However, in the definition of "Secured Debt," the phrase "Guarantor's unconditional and absolute guaranty" uses the term "guaranty" in its lowercase form, as opposed to "Guaranty" in its uppercase form. Further, in the same sentence, the term "Guaranty" is used in the uppercase form regarding the definition of the term "Rent." If the parties intended the term "guaranty" to refer to the guaranty agreements executed by the Players, they could have easily used the uppercase form of the term just as they did later in the same sentence. However, the mortgages state that the Secured Debt is the "unconditional and absolute guaranty of the due and punctual Rent." Applying the meaning of the plain language of all the terms in this clause, it is clear that the Secured Debt as defined in the mortgages is the same debt that EAR owed to Icon: specifically, the unpaid rent for the leased equipment. Additionally, the mortgages state that "[a]ll sums realized by [Icon] shall be applied to the Secured Debt." Thus, the full amount of Icon's bid must be applied to the secured debt. Under Wyoming law, and by Icon's own admission, the effect of a successful credit bid is to satisfy and discharge a mortgage. Thus, the effect of Icon's $22 million credit bid was to satisfy and discharge the mortgages and guaranty agreements executed by the Players. Because the mortgages in this case secured the same debt that EAR owed to Icon, Icon's $22 million credit bid satisfied EAR's debt to Icon.

¶ 29	We acknowledge Icon's argument that the purpose of the $22 million credit bid was to make sure that the Players did not redeem the Wyoming real estate at a deflated price under

-10-

Wyoming's theory of lien foreclosure. While this may have been a sound and reasonable business strategy, the plain language of the mortgage agreements stated that they secured the same debt that EAR owed to Icon. If the mortgage agreements had stated that only the guaranty agreements executed by the Players were secured, then Icon's strategy would have been successful and its claims against EAR would not have been extinguished. Unfortunately for Icon, based on the plain meaning of the language which the parties agreed upon when they entered into the mortgage agreements, EAR's debt was satisfied.

¶ 30     Additionally, we note that Icon argues that the trial court made incorrect assumptions in making its ruling when it stated that the Players may have a claim against EAR for the full amount of Icon's credit bid. We find the trial court comments regarding that issue to be dicta. Accordingly, we cannot rely on such comments as a basis for reversing the trial court's judgment. Therefore, we find that the trial court did not err in granting Republic Bank's motion for summary judgment.

¶ 31     For the foregoing reasons, the ruling of the circuit court of Cook County is affirmed.

¶ 32     Affirmed.